EMMA WHITEHURST JACOBS, Widow, ADDIE WHITEHURST COATS AND HUSBAND, R. F. COATS, AND FRANK WHITEHURST, v. G. C. JENNINGS.

(Filed 25 February, 1942.)

Easements § 5—Easement is limited to right of way existing at time of execution of instrument providing for continuance of the right of way.

In partition of lands it was provided that a cartway running through and beyond one of the tracts should remain as it then was, and that each of the parties should have the right to use same as a private way in going to and from his land. At the time of partition there was a gate at the highway, which had been removed at the time defendant acquired title to the servient tenement. Defendant erected two gates across the cartway, one at the highway and another at the other end of his lot where no gate had previously been erected. Plaintiffs instituted this action to enjoin defendant's interference with the use of the cartway. *Held:* Plaintiffs having bottomed their action upon the easement acquired in the partition proceedings, their rights were limited by the terms in which the right of way was therein designated in the absence of allegation and proof of some enlargement of or addition to the servitude therein created, and therefore defendant had the right to maintain the gate at the highway in the manner in which it was maintained at the time the easement was created notwithstanding that the gate had been subsequently removed, but upon the finding of the jury that defendant had unreasonably interfered with plaintiffs' use of the cartway, plaintiffs are entitled to the removal of the second gate erected where no gate had theretofore been maintained.

APPEAL by defendant from *Dixon, Special Judge,* at October Term, 1941, of PASQUOTANK. New trial.

This was an action to enjoin interference with a right of way over defendant's land.

In 1908, in the partition of the lands of Elliott Whitehurst among his heirs, a private right of way or cartway over Lot No. 4 was given the owners of the other lots in the partition, and expressed in these words: "The cartway running from the Main Road westwardly through the woods shall be and remain as it now is to be used by each of the said parties as a private way, and each shall have the right to use same for going to and from their lands." The plaintiffs are heirs of Elliott Whitehurst and owners of Lots Nos. 2, 3 and 5 in the partition, and the defendant is the present owner of Lot No. 4. Lot No. 4 contains 13.13 acres, and lies immediately west of the highway. The cartway extends westwardly from the highway 1,100 feet across Lot No. 4 and for some distance beyond. At the time of the partition the cartway was about 12 feet wide, and there were gates at each end, one at the highway and one "down at the woods." Subsequently the gate at the highway was removed. Defendant has recently erected two gates across the cartway, one at the highway and the other at the west end of Lot No. 4 where no gate had previously been erected. Plaintiffs base their action on the easement granted in the partition proceeding as therein described, and allege that defendant has unreasonably and wrongfully interfered with their use of this cartway, and ask that he be enjoined from maintaining these gates.

Issues were submitted to the jury and answered as follows:

"1. At the time of defendant's acquisition of title to Lot No. 4, on July 24, 1924, was the cartway referred to in the pleadings maintained as an open cartway without gates or fences, as alleged in the complaint?

"Answer: 'Yes.'

"2. If not, did the defendant's erection of the gates referred to in the pleadings unreasonably interfere with plaintiffs' use of said right of way, as alleged in the complaint?

"Answer: 'Yes.'"

Judgment was rendered requiring defendant to remove from the cartway the gates and other barriers placed thereon by him. Defendant appealed, assigning errors.

*J. H. LeRoy and McMullan & McMullan for plaintiffs, appellees.*
*J. W. Jennette and R. Clarence Dozier for defendant, appellant.*

DEVIN, J. By virtue of the decree in a partition proceeding among the heirs of Elliott Whitehurst, in 1908, the plaintiffs acquired an easement

consisting of a right of way over Lot No. 4, now belonging to the defendant. This right of way or cartway was described as running westwardly from the highway, and was declared to be a private way for the use of the other parties to the partition proceedings, to whom lands were allotted, for going to and from their lands lying west of Lot No. 4, and it was also declared that the cartway "shall be and remain as it now is."

It was admitted that at the time of the partition there was a gate at the point where the cartway entered the highway, and that there was another gate at the woods. With the latter gate we are not concerned. It was also admitted that in 1940 the defendant erected a gate across the cartway at the entrance to the highway, about where the gate had previously stood, and also a second gate at the west end of Lot No. 4, where previously there had been no gate across the cartway.

The case was tried below upon the theory that if the plaintiffs could show that the maintenance of the gates erected by the defendant in 1940 constituted an unreasonable interference with plaintiffs' easement, they would be entitled to have them removed. 28 C. J. S., 781; 12 Am. Jur., 1011; 73 A. L. R., 778. See, also, *Alexander v. Autens*, 175 N. C., 720, 95 S. E., 850. This view was correct in so far as the case involved the second gate, but it left out of consideration the fact that the plaintiffs' easement was only to use the right of way as it was in 1908, and that in 1908 there was a gate across the cartway at the entrance to the highway, and that the defendant had a right to maintain the gate at the highway as it had been maintained in 1908. Unless the plaintiffs' easement has been enlarged in some way so as to create an additional servitude on Lot No. 4, they would not have the right to require the removal of the gate at the highway.

The plaintiffs having bottomed their action upon the easement acquired in the partition proceeding, their rights were limited by the terms in which the right of way was therein designated. Upon the finding of the jury that the maintenance of the gates unreasonably interfered with the use of the right of way, plaintiffs would be entitled to require the removal of the second or western gate, but this did not have the effect of divesting the defendant of the right to maintain a gate on his own land across the cartway at the place where a gate stood when the easement was created. Unless the plaintiffs can allege and prove in some proper way their right to a servitude upon defendant's land in addition to that imposed by the partition proceeding, the defendant would have the right to hold his land servient only to the cartway as it was in 1908, and subject to no greater burden. Nor would the finding that the gates had been removed in 1924, at the time of the execution of the deed of trust on Lot No. 4 under which defendant subsequently acquired title, be determinative of the defendant's rights.

The cause is remanded to the Superior Court for a new trial not inconsistent with this opinion. This disposition of the appeal renders unnecessary consideration of other exceptions noted at the trial.

New trial.