WURTZEL AND GORDON, INC. v.
MUSANTE, BERMAN, STEINBERG COMPANY, INC.

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 63533

Memorandum filed June 9, 1947.

*Theodore E. Steiber,* of Bridgeport, for the Plaintiff.

*Charles Weingarten,* of Bridgeport, for the Defendant.

CORNELL, J.  This is an action in which injunctive relief and damages are claimed because of the alleged interference, hindrance and obstruction of plaintiff's use of a passway by defendant, its tenants and others acting under its authority or upon its invitation.  The plaintiff is a tenant in occupancy of premises situated in the city of Bridgeport, owned by Jacob B. Wurtzel, the building on which fronts on the west side of Water Street.  The defendant is the owner and in occupancy of land which lies along the east side of Middle Street which is west of and in that section lies substantially parallel with Water Street.  The plaintiff conducts a wholesale butter and egg business in the premises which it leases.  The defendant is engaged in the wholesale fruit and vegetable business in the building on its land.  Both plaintiff and defendant use motor

trucks for the purpose of loading and unloading the merchandise in which they respectively deal. Between the rear of the buildings occupied by each is an open area, on part of which is a passway which both have the right to use in connection with the purposes to which their respective premises are devoted. The remainder of such area consists of open land owned by Jacob B. Wurtzel and included in his lease to plaintiff, over which the passway does not lie.

The passway has been in existence since October 13, 1869. The land on which it is located was owned by Edmund V. Hawes and George B. Waller as tenants in common. On that date Hawes delivered to Waller a deed to his interest in the easterly half and Waller delivered to Hawes a deed to his interest in the westerly half, which deeds are recorded in the land records of the City of Bridgeport, in volume 34 at page 779 and volume 34 at page 777, respectively. In such deeds each of the parties covenanted "that there shall be left open forever between the two portions" of their respective lands, "an open passageway for the use and convenience of the occupants of both of said respective tracts, one-half of which is contributed by me and the other half by" the other "and which he hereby does contribute and set apart forever for the uses and purposes aforesaid." For present purposes it may be said that such passway commences on Fairfield Avenue (formerly Beaver Street) at a point where its westerly line is about one hundred and fifty feet east of the east line of Middle Street, and runs southerly at practically a right angle with the southerly line of Fairfield Avenue with a width of twelve feet for a distance of about one hundred and twenty four and one-half feet; it thence proceeds westerly for a distance of aproximately forty seven feet from and at a substantially right angle to the west line of the aforesaid section which at that point is its north line to the easterly line of defendant's property at a width of about thirty five feet; thence, southerly for a distance of about thirty feet at a width of twenty feet between the easterly line of defendant's property and the westerly line of the open area of the premises of Jacob B. Wurtzel; thence southerly for a distance of about thirty feet at a width of ten feet to land of other persons adjoining its southern extremity at that point.

The defendant has been in occupancy of the building where it now is since 1935. Prior to that date and since, such premises were used by a concern under the name of Musante & Pastine which had conducted a wholesale fruit, and to a much smaller

extent, a wholesale vegetable business there. When defendant took possession the amount of traffic in and out to its building was much increased. On the east side of such building within a few feet of its northeasterly corner and very close to, if not on, the west line of the passway at that point, there is a large doorway which it uses for loading and unloading the merchan-dise which it buys and sells, the bottom of which is about level with the floor of a motor truck. It employs a number of large trucks having an overall length of about twenty six to twenty seven feet. In loading and unloading, these vehicles are so placed that the back of them abuts the easterly wall of defend-ant's building at the loading doorway. When in this position they extend out in such manner as to interfere with or wholly or partially obstruct other motor vehicles proceeding on the passway at that point, particularly plaintiff's. This condition is often augmented by the practice of permitting another truck after it has been unloaded or waiting to load, to stand near one in process of being loaded or unloaded. Defendant's trucks, also, frequently pass over or upon portions of the Wurtzel vacant rear land and maneuver upon or across same in getting into position to load at the door or in leaving after having loaded or unloaded there. In addition, after about 4 o'clock in the afternoon when defendant's trucks are no longer permitted to stand upon the nearby highways, they habitually park at various points on the Wurtzel open land and in and upon portions of the passway, sometimes in such position that plaint-iff's trucks are unable to go in or come out and at times so close to plaintiff's garage doors that vehicles stationed within have been unable to gain egress therefrom. In the most southerly forty feet of the passway where it is only ten feet wide, one of defendant's tenants habitually parks a car or cars so that it is impossible for defendant's trucks to make use of that section at all when such condition prevails. These practices with some variations, resulting in serious interference to the plaintiff, have continued for many years but at all times with the express or implied permission of Jacob B. Wurtzel or his tenant, the plain-tiff. Neither on defendant's part nor that of its predecessor in title or in occupancy were any of these acts or conduct adverse to Jacob B. Wurtzel. Though long continued, open and well known to plaintiff's lessor, such conduct could not and it is found, did not, under such condition, increase the extent of defendant's right to use the passageway. *Sacks* v. *Toquet,* 121 Conn. 60, 66, 103 A. L. R. 677.

At various times attempts have been made to so regulate the use of the passway that such interference and obstructions would be eliminated or minimized but none of these have proved successful for more than a short time. The center line of the passway throughout its length, with the exception of the one hundred and twenty four and one-half foot long section extending south from Fairfield Avenue is coincident with the dividing line between the Jacob B. Wurtzel property and premises now owned by the defendant, half of the width of the passway being over the land of each of such owners so that each such portion is servient to the other's premises, to the extent defined in the instrument creating the same. The latter provides: "Said passageway shall be always kept open free from all permanent or unnecessary obstructions and devoted to the necessary and proper use thereof, as a passageway by the occupants of both our said respective tracts of land and for the necessary and proper passing, and repassing of their teams and foot travel, the narrower portions thereof shall at all times be kept open free from obstructions by standing teams or otherwise. And in the broader portions thereof standing teams or other necessary temporary obstructions shall be so disposed as not to interfere with the proper use of said tracts as a passageway in the manner aforesaid."

It seems evident that the primary purpose in creating the passageway was to enable the occupants of the respective tracts of land to which it was made appurtenant, to use the same for the "necessary and proper passing and repassing of their teams and foot travel." By necessary implication it recognizes that this involves the loading and unloading of such vehicles at the premises of such occupants. However, as an unreasonable use of the passageway for that purpose might conceivably interfere with the authorized use of passing by others, it subordinates its employment for the purpose of loading or unloading by either party to the right to pass and repass on the part of the other. To effectuate this intention it is specifically provided that ". . . the narrower portions thereof shall at all times be kept open free from obstructions by standing teams or otherwise, and in the broader portions thereof standing teams or other necessary temporary obstructions shall be so disposed as not to interfere with the proper use of said tracts as a passageway in the manner aforesaid." The words "said tracts" as employed in the quotation refer to the strip of land dedicated

for its use as such passway by each of the proprietors of the adjoining lands when it was created. The language quoted recognizes that standing vehicles whether parked or while engaged in loading or unloading would necessarily deprive others of the opportunity of passing over the narrower portions, while in the wider areas such interferences might be obviated if such vehicles were so placed and arranged that others could still go by.

Whether these implied prohibitions go so far as to absolutely preclude occupants of land adjoining the narrower portions from stationing vehicles on them to load or unload at their premises at all times is not a wholly untenable view. However, a reasonable construction of the provision governing the use of the way read in the light of the intention in creating and locating it where it is would seem to indicate that occupants at the narrower portions may load and unload vehicles there, provided that while doing so no other vehicle entitled to pass at such point would be interfered with, hindered or delayed. This conclusion harmonizes with the way in which such portions — particularly the most southerly with a width of only ten feet — has been used over a great many years, both during plaintiff's tenancy and defendant's ownership and that of its immediate predecessor's in title. The long continued use of a passway for such a purpose indicates an intention of the parties that it might be used for that purpose. *Sachs* v. *Toquet,* supra, 64. By the "narrower portions" as this term appears in the deeds creating the passway, is meant (a) the section thereof which leads south from Fairfield Avenue for a distance of about one hundred and twenty four and one-half feet having a width of twelve feet and (b) the part running south from a point about on a line with the north line of the garage on the property of Jacob B. Wurtzel having a width of ten feet. In both of these the parking of motor vehicles as well as leaving horse drawn or other vehicles standing thereon while not actually engaged in loading or unloading is, perforce, a violation of the terms of the writing creating the passageway. While tenants or other occupants adjoining the designated narrower portions have the privilege of stopping vehicles there to load or unload, its exercise is subject to the right of others entitled to pass and repass at such points so that if during such loading or unloading such a vehicle intends to so pass, those then loading or unloading must yield to it and so must interrupt such loading or unloading and drive out of such portions so that the passing

vehicle may have the benefit of the full width of such passage-way in such area to enable it to proceed.

The "broader portion" of such passageway as that term is em-ployed in the deeds creating the passageway are all of the areas defined therein other than the sections designated the "narrow-er portions" as these terms are interpreted supra. As appears from the description of the passageway and the·uses to which it may permissibly be put, such uses are three in number. viz., (1) for foot travel; (2) for the passing and repassing of vehicles and (3) the "temporary" stationing of vehicles theron provided that they are "so disposed" as not to obstruct or interfere with the passing of other vehicles in charge of per-sons entitled to use the passageway. It seems obvious from this that no person has the right at any time whether loading, un-loading or otherwise, to place any motor truck or other vehicle on the "broader" parts of the passageway unless it is so station-ed that it neither obstructs nor interferes with the passing of other vehicles in such areas.

By implication the language defining the permissible uses of the passageway forbids the parking of vehicles on its broader as well as its narrower portions, using the term "parking" in the sense of stationing vehicles for indefinite periods not incident to passing or repassing or while waiting to load or unload. The reference, of course, is to "teams," meaning animal drawn ve-hicles, principally trucks, but in the expansion of the use of the way to include motor driven vehicles, the restrictions apply to the latter equally with the former. Aside from the requirement that these must be "so disposed" when standing that they will not obstruct the passing of other vehicles, the permission for them to stand is that condition be "temporary," only. Apply-ing this qualification to the purposes to which the passageway is devoted, its extent excludes the stoppage of vehicles upon it, which is not immediately connected with passing or repassing or loading or unloading. The conclusion as respects the "broad-er" portions of the passageway is that all occupants of premises to which the use thereof is appurtenant may legally station ve-hicles thereon for the purpose of loading or unloading or while waiting to come into position to do so, but that the exercise of that right is subject to the limitation that while doing so either they be so placed as to allow space for the free and convenient passing at such points of all other vehicles in lawful use of such passageway; and that the parking of vehicles on such broader

portions other than as stated constitutes a violation of the terms and provisions of the writing creating the easement.

Applying these principles to the facts heretofore stated, defendant has violated plaintiff's rights in and to the right to pass and repass upon the passageway and in and to the vacant rear land of Jacob B. Wurtzel; its tenants have done likewise with respect to the narrower portions thereof. As all of them claim the right to continue in such acts and conduct, plaintiff is entitled to equitable relief and would be to money damages if it had established proof of the latter. The evidence, however, .wholly fails to translate the inconvenience and frustration to which plaintiff has been subjected into terms of dollars or measureable by such standard. In consequence only nominal damages may be awarded. These are fixed at $35. Plaintiff is entitled to a permanent injunction as follows:

Defendant, its successors, assigns, agents, servants, employees, invitees, licensees, tenants and all other persons acting for it, in its behalf, with its knowledge or under its authority, express or implied, is perpetually enjoined to refrain and wholly desist (1) from parking or placing or permitting to remain thereon, any motor driven or other drawn or propelled vehicle in that portion of the passway described in two certain deeds from Edmund V. Hawes to George B. Waller and George B. Waller to Edmund V. Hawes, respectively, both bearing date, October 13, 1869 and recorded in Bridgeport Land Records in the town clerk's office of the City of Bridgeport, State of Connecticut, respectively, in Volume 34 Page 779 and Volume 34 Page 777, respectively, which passageway lies between premises now owned by defendant on the west (known formerly as the Mills property) and land owned by Jacob B. Wurtzel on the east and is ten feet in width, and likewise in that part of said passway which extends in a southerly direction from Fairfield Avenue (formerly Beaver Street) for a distance of about one hundred and twenty four and one-half feet being twelve feet in width, except only while actually engaged in loading and unloading merchandise, supplies or other chattels; in which latter case such vehicles shall be immediately placed in position to load or unload, as the case may be, at once upon entering such sections of said passageway and to leave the same at once upon completing such loading or unloading, and, provided further, that in event that any vehicle of any character owned or in the possession of the plaintiff, its subtenants, agents, servants, employees, invitees,

licensees or by any other person acting by plaintiff's authority or under its command, shall desire to enter or drive upon such portions of said passageway during the progress of any such loading or unloading thereon and shall give notice to that effect to the person loading or unloading, the latter shall immediately thereupon and without any delay except for the time reasonably necessary for the puspose, interrupt such loading or unloading and drive away and remove such vehicle or vehicles from such portions of said passageway; and (2) as respects all other portions of said passway to wholly and absolutely desist and refrain from parking or permitting to stand on the same or on any portion thereof wholly or partially at any time, execpt while engaged in a continuous act of loading or unloading, or while reasonably awaiting opportunity to load or unload, any truck, motor car or any other drawn or power propelled vehicle and to so refrain from placing or permitting to stand on said part of said passway or any portion thereof any such truck or other vehicle for the purpose of loading or unloading its merchandise unless during such parking or standing or loading or unloading such truck or other vehicle shall be so placed while so stationed or standing upon said portions of said passageway as to afford plaintiff's vehicles and those of its assigns, tenants, agents, servants and employees and others delivering merchandise to plaintiff or any of them, or carrying same away from plaintiff's place of business or that of any of its subtenants or tenants, sufficient space to pass defendant's said vehicles without hindrance, interference or obstruotion; and (3) to absolutely and wholly desist and refrain from at any time hereafter placing, parking or stationing on the open area of land leased by plaintiff from Jacob B. Wurtzel any motor truck or vehicle of any kind or charaoter or to drive over or upon or permit any person so to do while delivering to or taking away from defendant's premises any merchandise, supplies or other chattel at its command or under its authority, express or implied, all under a penalty of $1000.

Judgment accordingly.